# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| BILL HEARD ENTERPRISES, INC. et al. | } | CASE NO. 08-83029-JAC-11 |
| | } | |
| | } | CHAPTER 11 |
| Debtor(s). | } | |
| | | |
| UNITED SERVICE PROTECTION | } | A.P. No. 08-80187-JAC-11 |
| CORPORATION and UNITED SERVICE, | } | |
| PROTECTION, INC. | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| BILL HEARD ENTERPRISES, INC., et al. | } | |
| Defendant(s). | } | |

## MEMORANDUM OPINION

United Service Protection Corporation and United Service Protection, Inc. (collectively "USP") and Columbus Bank & Trust ("CB&T") assert competing claims to approximately $53,346 being held in one of the Bill Heard debtors' general operating accounts maintained at CB&T. CB&T argues that it has a right to setoff the funds against prepetition obligations owed by the Bill Heard debtors. USP asserts that it is entitled to a constructive trust over the sums held in the account and that its claim to the funds is superior to CB&T's right to setoff. USP seeks an injunction to prevent CB&T from offsetting the funds held in the account. For the reasons set forth herein, the Court will grant CB&T's motion for summary judgment and finds that CB&T is entitled to exercise its setoff rights in the deposit account.

## I. BACKGROUND

1.     On September 28, 2008, the Bill Heard debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Prior to filing bankruptcy, Bill Heard owned and

operated fourteen Chevrolet dealerships in seven states. The issue before this Court involves only one of the dealerships, the Bill Heard Chevrolet Company in Columbus, Georgia (the "Columbus dealership").

2.     Prior to the petition date, USP entered into certain dealer agreements with the Columbus dealership, as well as other Bill Heard dealerships, pursuant to which the Columbus dealership agreed to offer its customers motor vehicle extended service contracts ("VSCs") written on USP paper. The Columbus dealership collected the purchase price for each VSC at the point of sale along with the purchase price for the automobile sold.

3.     Under the dealer agreements, the Columbus dealership agreed within fifteen days after the last day of the calendar month in which the Columbus dealership issued a VSC to remit a portion of the money collected (the "dealer cost") to USP. The dealer agreements required the Columbus dealership to "hold the Dealer Cost in a segregated account in a fiduciary capacity as trustee for [USP] and under conditions satisfactory to [USP] until remitted to [USP]."[1] Failure to remit dealer cost constitutes a material breach of the agreement.

4.     The Columbus dealership failed to segregate the dealer costs as required by the dealer agreements. Instead, the dealership deposited the funds into its general operating account maintained at CB&T, account number 1488503.

5.     As of the petition date, the Columbus dealership's operating account had a balance of $170,056.21. From this amount, USP asserts that on the petition date, a sum of $53,346 had been paid into the operating account from the sale of VSCs. CB&T admits that between August 11, 2008

---

[1]     Docket # 63-66, Exhibit A-Dealer Agreements.

and September 22, 2008 the debtors deposited approximately $53,117 into the Columbus dealership's operating account as a result of VSC sales.

6.      As of the petition date, CB&T held a claim against the Bill Heard debtors in excess of $75,000,000 pursuant to a number of promissory notes.[2] Postpetition CB&T has reduced its claim against the Bill Heard debtors through the foreclosure of collateral and other means.  CB&T currently has a deficiency claim against the debtors in excess of $10,000,000.  Pursuant to certain guaranties executed by the Columbus dealership in favor of CB&T,  the Columbus dealership is responsible for the entire amount of the deficiency.[3]

7.      CB&T's Operating Account Agreement provides in the section titled "Setoff" that CB&T may setoff against the operating account, as follows:

> [CB&T] may . . . set off the funds in this account against any due and payable debt owed to us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdrawal.  If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.[4]

8.      On October 21, 2008, approximately three weeks after the petition date, CB&T filed a motion for relief from the stay to permit setoff.   The motion sought relief from the stay to setoff $170,056.21 in prepetition funds held in the Columbus dealership operating account and other amounts.

---

[2]     *See* Proof of Claim of CB&T filed March 31, 2009 (Claim no. 3015).

[3]     *See* Proof of Claim of CB&T filed March 31, 2009 (Claim no. 3015).

[4]     Gaylor Aff., Ex. A, ECF No. 52.

9. On October 31, 2008, USP filed an objection to CB&T's motion and asserted an interest in the funds. Objections to the motion were also filed by GMAC, LLC and the Official Committee of Unsecured Creditors.

10. On December 18, 2008, USP filed the present adversary proceeding asserting its interest in the funds.

11. In February of 2009, the Court entered an order consolidating USP's adversary proceeding and CB&T's setoff motion with an adversary proceeding filed by GMAC on January 15, 2009. Subsequently, GMAC was paid in full for all its claims against the debtors and no longer asserts any claim in the subject funds.

12. On January 14, 2010, the Court entered an order severing the USP adversary proceeding from the GMAC adversary. William F. Perkins as liquidating trustee, successor in interest to the debtors and creditors committee, no longer claims an interest in the funds in the operating account.[5]

13. CB&T asserts, and there has been no evidence presented otherwise, that at no time prior to filing the setoff motion was CB&T aware of any dealer agreements between the Columbus dealership and USP. CB&T was not aware that there were funds received and held by the Columbus dealership resulting from the sale of VSCs until USP filed its objection to CB&T's setoff motion.

14. CB&T asserts that using a first-in, first-out method of accounting, all funds on deposit in the the Columbus dealership operating account as of the petition date were deposited by sources other than from proceeds of VSC sales with the possible exception of $1,262.00.

## II. DISCUSSION

---

[5]        *See* Stipulation and order approving the settlement of claims between William F. Perkins, in his capacity as the Liquidating Trustee, and USP, ECF No.32.

**A.      Summary Judgment Standard**

Pursuant to FED. R. CIV. P. 56(C), summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002).

The moving party bears the initial burden of showing that there are no genuine issues of material fact to be decided at trial.  *Celotex,* 477 U.S. at 323.  When the moving party has satisfied its burden, the non-moving party cannot rest upon the pleadings.  Instead, the non-moving party must go beyond the pleadings and demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial.  *Id.* at 324.

The evidence and all factual inferences therefrom must be viewed in the light most favorable to the party opposing the motion and all reasonable doubts about the facts must be resolved in favor of the non-moving party.  *Acevedo v. First Union Nat. Bank*, 476 F.3d 861, 865 (11th Cir. 2007); *Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.)*, 440 F.3d 1296, 1300 (11th Cir. 2006); *see also Loren v. Sasser*, 309 F.3d 1296, 1301-02 (11th Cir. 2002); *Hyman*, 304 F.3d 1179  (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)).

**B.      CHOICE OF LAW**

"[Q]uestions of setoff are governed exclusively by section 553 of the Bankruptcy Code."

*Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.)*, 940 F.2d 1507, 1512 (11th Cir. 1991).

Section 553(a) of the Bankruptcy Code reads, in relevant part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

Although the Bankruptcy Code does not create a federal right of setoff, §553 of the Bankruptcy Code preserves, with certain exceptions, any right of setoff that a creditor possessed prepetition against the debtor under applicable non-bankruptcy law. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995); *In re Prudential of Florida Leasing, Inc.*, 478 F.3d 1291, 1297 (11th Cir. 2007); *Carlton Co. v. Jenkins (In re Jenkins)*, 2004 WL 768574 *2 (Bankr. S.D. Ga. 2004). Georgia law clearly governs the validity of CB&T's prepetition right of setoff in this instance wherein the subject funds are in an operating account that is maintained at CB&T, a Georgia banking corporation operating in Georgia, and the account was maintained by the Columbus dealership, a Georgia corporation that operated in Georgia.

USP argues that Florida law governs the outcome of this case because the dealer agreements executed by the Columbus dealership required the dealership to hold the amounts collected for USP in a fiduciary capacity as trustee for USP and provide that the agreements will be controlled and construed under Florida law. It is undisputed, however, that the Columbus dealership failed to segregate the funds as required by the dealer agreements. Instead, the Columbus dealership deposited the funds into a general operating account maintained in Georgia. Once the Columbus

dealership breached its dealer agreement with USP by commingling fungible proceeds from the sale of the VSCs into the operating account maintained at CB&T, same became subject to CB&T's right of setoff which is governed by Georgia law. *See Dzikowski v. Northern Trust Bank of Fla. (Prudential of Florida Leasing, Inc.)*, 478 F.3d 1291, 1297 (11th Cir. 2007)(explaining that substantive law, usually state law, determines the validity of the right of setoff under the Bankruptcy Code). Georgia state law must be examined to determine whether mutuality exists. *Levine v. Kenny (In re Flooring American, Inc.),* 302 B.R. 403 (Bankr. N.D. Ga. 2003)(explaining that mutuality is an issue of state law).

### C.      CB&T's Prepetition Right of Setoff is Preserved under 11 U.S.C. § 553(a).

In order for a creditor's prepetition right of setoff to survive in bankruptcy under § 553(a), three requirements must be satisfied:

(i) the parties must owe each other mutual debts;

(ii) the mutual debts must have arisen prepetition; and

(iii) the creditor's claim cannot fall within one of the three exceptions listed in § 553(a)(1)-(3).

*In re* McKay, 420 B.R. 871, 877 (Bankr. M.D. Fla. 2009)(*citing Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.)*, 940 F.2d 1507, 1512 (11th Cir. 1991). Setoff is not permitted under § 553(a)(1)-(3) to the extent that –

(i) the creditor's claim against the debtor is disallowed – § 553(a)(1);

(ii) the creditor obtained the claim from a third party  – § 553(a)(2); or

(iii) the creditor incurred the debt "for the purpose of obtaining a right of setoff" – § 553(a)(3).

*Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.)*, 940 F.2d 1507, 1513 (11th Cir. 1991).

In this case, the exceptions to setoff are inapplicable. CB&T's claim has not been disallowed; CB&T did not obtain its claim from a third party; and there is no allegation that CB&T incurred the debt for the purpose of obtaining a right of setoff as CB&T was the relationship bank for the debtors' businesses, including the Columbus dealership, for many years. Accordingly, this Court must simply determine whether the parties owe each other mutual debts under Georgia law that arose prepetition.

While the Bankruptcy Code does not define the term mutual for purposes of §553, "the mutuality of debts requirement is generally considered satisfied where the creditor is directly obligated to the debtor and the debtor is, in turn, directly obligated to the creditor, without the involvement of third-parties or fiduciary relations . . . provided, of course, that the debts involved in the setoff arose prior to the commencement of the bankruptcy case." *In re K.D. Builders*, *Inc.*, 382 B.R. 1 (Bankr. D. Mass. 2008).

The deposit of cash into a deposit bank account generally creates a debtor-creditor relationship between the bank, as debtor, and depositor, as creditor, at which time the depositor parts with title to the funds in exchange for the debt owed to him by the bank. *In re Lehman Brothers Holdings Inc.*, 404 B.R. 752 (Bankr. S.D.N.Y. 2009). "Under Georgia law, when money is deposited in a bank, title to the funds passes to the bank . . ." *Eleison Composites, LLC v. Wachovia Bank*, 267 Fed.Appx. 918, 924 (11th Cir. 2008). Thus, title to the funds deposited into the Columbus dealership's operating account as a result of the VSC sales passed to CB&T when same

were deposited into the dealership's account. Prepetition, CB&T owed a debt to the Columbus dealership to the extent of the funds on deposit in the dealership's general operating account. Likewise, the Columbus dealership was directly obligated to CB&T prepetition under various notes as a guarantor of same. Accordingly, CB&T has satisfied each of the requirements under § 553 for setoff.

**D.      Character of Account:    The Right of Setoff Requires a Determination Regarding the Character of the Deposit and CB&T's Knowledge or Notice of its Character**

USP argues that it has a right to the funds that were deposited in the Columbus dealership's operating account from the sale of VSCs under Florida law on the basis of an express, constructive, or resulting trust. CB&T responds that any right USP had to the funds under the dealer agreements does not affect CB&T's right to setoff because CB&T was not aware that USP had an interest in the funds. At no time prior to CB&T filing the setoff motion was CB&T aware of any dealer agreement between the Columbus dealership and USP. CB&T was not aware that the Columbus dealership had received funds from the sale of VSCs and deposited same into the dealership's general operating account.

CB&T cites several Fifth Circuit and Georgia decisions holding that a creditor's right to setoff against a deposit account is unaffected by a third-party's interest in same where the creditor has no knowledge of the third-party's interest in the funds.[6]  In *In re Goodson Steel Corp.*, 488 F.2d 776 (5th Cir. 1974), the Fifth Circuit held that a bank was entitled to setoff funds held in a debtor's

---

[6]      In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981. The Fifth Circuit decisions cited by CB&T were decided prior to 1981 and remain binding precedent in the Eleventh Circuit.

payroll account against the debtor's past due note. Although the account was designated as a payroll account, the account was actually a general deposit account in nature without an agreement to the contrary. Interpreting Texas law, the Fifth Circuit explained that when money is deposited into a bank without any special agreement, the money is commingled with other funds of the bank. In such transactions, the bank becomes the owner of the funds and a debtor-creditor relationship is created between the bank and the depositor. When, however, money is deposited with an agreement that the identical deposit shall be returned or shall be paid for a specific purpose, the relationship of debtor-creditor is not created. Such a transaction is a special deposit and the bank is liable for same as bailee. In *Goodson*, the payroll account was special in name only there being no agreement that the account was limited for a specific purpose. The debtor was entitled to withdraw or transfer the funds for any purpose and the bank was not under any obligation to hold the funds apart from other funds. Therefore, the debtor's designated payroll account was not a special account that deprived the bank of its setoff rights where there was no agreement that the account was to be kept isolated.

In *Kaufman v. First Nat'l Bank of OPP, Alabama,* 493 F.2d 1070 (5th Cir. 1974), the Fifth Circuit held that a bank could not offset funds held in an escrow and collect-on-delivery accounts because the bank had knowledge of the special nature of the funds. Funds deposited for a special purpose known to the bank, or under a special agreement, cannot be setoff by a bank. The court of appeals explained that in Alabama, a special purpose deposit creates no debtor-creditor relationship and the bank acquires no title to the funds.

Similarly, the Georgia Court of Appeals has explained that "[i]t is well settled in [Georgia], as in a sizeable number of other jurisdictions, that unless funds deposited with a lending bank are in an account governed by an agreement which designates the funds as trust funds, or *unless the*

*lending bank by other means has actual knowledge* that the funds . . . are intended to discharge a specific obligation or otherwise partake of the character of the trust funds, then the funds are treated as any other general deposit funds, are commingled with other funds on deposit with the bank, and are subject to set-off against any matured indebtedness for which the bank is creditor to the principle." *Smeltzer v. Bank of Fitzgerald*, 386 S.E.2d 406 (Ga. App. 1989)(quoting *Cotton States, etc., Ins. Co. v. C&S Nat. Bank*, 168 Ga. App. 83, 87(2) 308 S.E.2d (1983). In this Georgia case, Smeltzer ordered a bank in which he and his wife had a joint account to wire $41,000 to the escrow account of an attorney maintained at the Bank of Fitzgerald. The purpose of the transfer was to enable the attorney, acting as the Smeltzers' agent, to purchase real estate located in Georgia. Despite Smeltzer's instructions, the transferring bank wired the funds to the Bank of Fitzgerald without any limiting instructions. Although Smeltzer did not have an account at the Bank of Fitzgerald, he owed an existing debt to the bank. Upon receiving the funds, the Bank of Fitzgerald immediately applied the funds to Smeltzer's debt and did not learn until the following day that the attorney had been expecting a wire transfer to his escrow account. As it was uncontroverted that the Bank of Fitzgerald had no knowledge that the wired funds were intended for the attorney's escrow account when it setoff the funds against Smeltzer's debt, the Georgia Court of Appeals allowed setoff under Georgia law.

The Georgia Court of Appeals rejected Mrs. Smeltzer's argument that the funds which originated in the joint account with her husband actually belonged to Mrs. Smeltzer. Even if same were true, the court explained "that question of fact would not be material to the resolution of this case because  [the Bank of Fitzgerald] had no knowledge whatsoever that the funds belonged to anyone other than {Mr.] Smeltzer." *Smeltzer v. Bank of Fitzgerald*, 386 S.E.2d 406, 408 (Ga. App.

1989). USP makes a similar argument that the funds in dispute in this case did not belong to the Columbus dealership under Florida law because the dealership was required under the dealership agreements to hold same in trust for USP.  CB&T's right of setoff cannot be controlled by the Columbus dealership's breached obligations to USP under the dealer agreements.  Pursuant to § 553, CB&T's right of setoff is controlled by applicable non-bankruptcy law which this Court has determined is Georgia law.  Clearly, under Georgia law a bank maintains its right of setoff in funds commingled in a general operating account when the bank has no knowledge that the funds belonged to anyone other than the depositor.

The character of the account at issue is the most significant factor when determining mutuality of debts and a bank's right of setoff.  *In re K.D. Builders, Inc.,* 382 B.R. 1, *6 (Bankr. D. Mass. 2008).  In this case, the character of the account was in the nature of a general operating account.  It is undisputed that CB&T had no knowledge of the dealer agreements requiring the Columbus dealership to hold the proceeds from the VSCs in trust for USP.  Instead, the Columbus dealership deposited same into its general operating account, and CB&T is entitled under § 553 to setoff the commingled funds in the account on the date of the petition against the prepetition debt owed by the Columbus dealership to CB&T where it is undisputed that CB&T had no knowledge that any alleged trust property had been deposited into the dealership's operating account.  *See In re Badour*, 2009 WL 1139409 *3 (Bankr. N.D. W. Va. 2009)(finding that debtor's act of depositing special account funds in general accounts without notifying the bank of a special purpose for the deposits destroyed the special nature of the funds under the general rule of commingling).

USP attempts to distinguish the cases cited by CB&T on the grounds that in each case the bank had already setoff the funds in dispute whereas in this case CB&T seeks permission to lift stay

to effectuate the setoff. USP asserts that this distinguishing factor is crucial because in those instances the banks relied upon the assumption that all the funds in the debtor's account were property of the debtor. In contrast, USP argues that CB&T has not change its position in reliance upon the deposit and should, thus, be denied its right to setoff. USP cites several cases decided prior to 1927 and one more recent case interpreting Ohio law in which various courts used an equitable rule to deny a bank's right of setoff where the bank did not changed its position in reliance upon the deposit despite the bank's lack of knowledge of the trust nature of the deposit.[7] None of the cases cited by USP purport to interpret Georgia state law. CB&T counters, instead, that a majority of jurisdictions, including Georgia, allow a bank to setoff funds belonging to a third-party if the bank has no knowledge of the third-party's interest.

This Court finds that CB&T acted entirely properly in first filing a motion to lift stay to seek relief to setoff the funds at issue and will not penalize the bank for proceeding accordingly. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995)(explaining that § 362(a) gives rise to an automatic stay of various types of activities including the setoff of any debt). To say that CB&T has not changed its position in reliance upon the deposit would overlook the fact that CB&T filed the motion to lift stay seeking permission to setoff the funds at issue before it had any knowledge of USP's asserted interest in the funds. CB&T no less changed its position by filing the motion to lift stay than if it had simply effectuated the setoff. Accordingly, this Court will not use an equitable rule that has not been adopted in Georgia to deny CB&T's right of setoff where the bank has followed the rules set forth in the Bankruptcy Code while attempting to setoff the debt at issue.

---

[7]     *See Citizens' & Southern Bank v. Fayram,* 21 F.2d 998 (5th Cir. 1927); *Fulton Nat'l Bank v. Hosier*, 295 F. 611 (5th Cir. 1923); *Swift & Co. v. Hammond Farmer's Ass'n,* 22 F.2d 166 (E.D. La. 1927); *In re Steele-Smith Dry Goods Co.,* 298 F. 812 (N.D. Ala. 1924); and *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267 (11th Cir. 2003)(interpreting Ohio law).

## II.  CONCLUSION

For the foregoing reasons, the Court grants CB&T's motion for summary judgment.  There are no genuine issues of fact to be decided at trial and CB&T is entitled to judgment as a matter of law.  Pursuant to § 553 of the Code, CB&T is entitled to exercise its setoff rights against the total amount of the deposit account maintained at CB&T by the Columbus dealership.

Alternatively, the Court finds that even if USP has a superior right to the funds held in the Columbus dealership's operating account, CB&T has submitted evidence that using a first-in, first-out method of accounting, all funds deposited into the Columbus dealership's operating account were deposited by sources other than purchasers of VSCs with the possible exception of $1,262.00.[8] USP counters that CB&T has provided no analysis of any documentation regarding the first-in, first-out analysis performed by CB&T.    A general denial will not, however, suffice on motion for summary judgment.

A separate order will be entered consistent with this opinion.

**DONE and ORDERED** this date: October 19, 2010.

/s/    Jack Caddell
Jack Caddell
United States Bankruptcy Judge

xc:      Debtor(s)
Kevin A. Rogers, attorney for United Service Protection Corp.
Jeffrey W. Kelley and Stephen S. Roach, attorney for Columbus Bank & Trust Co.
Mark A. Fink, attorney for William F. Perkins, in his capacity as Liquidating Trustee

---

[8]       Gaylor Aff., Ex. A, ECF No. 52.